IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VALIANT ENTERTAINMENT, INC. and VALIANT ENTERTAINMENT, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> VALIANT INTELLECTUAL PROPERTIES, LLC, <br><br> Defendant. | CIVIL ACTION NO: 07 cv 7784 <br><br> COMPLAINT |



Plaintiff Valiant Entertainment Inc., by and through its attorneys, hereby alleges for its Complaint against Defendant Valiant Intellectual Properties, LLC as follows:

### THE PARTIES

1. Valiant Entertainment, Inc. is a limited liability corporation organized under the laws of the British Virgin Islands with a registered address of P.O. Box No. 957, Road Town, Tortola, British Virgin Islands.

2. Valiant Entertainment, LLC is a Delaware limited liability company with a principal place of business of 455 East 86th Street, New York, New York.

3. Valiant Entertainment, Inc. and Valiant Entertainment, LLC are sometimes collectively referred to hereinafter as "Plaintiffs".

4. Valiant Intellectual Properties, LLC ("VIP" or "Defendant") is a Delaware limited liability company with a principal place of business located at PO Box 2207, Wilmington, DE 19899.

## JURISDICTION AND VENUE

5.  This is an action for federal trademark infringement, false designation of origin, common law trademark infringement, and unfair competition.

6.  This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 because the actions described in the Complaint arise under the Lanham Act and present a Federal question over which this Court has jurisdiction. See 28 U.S.C. § 1338.

7.  Jurisdiction is also proper because the parties' citizenship is completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs. See 28 U.S.C. § 1332(a).

8.  This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because Plaintiff's state law and common law claims are so related to federal claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the Constitution of the United States.

9.  This Court has personal jurisdiction over Defendant because Defendant transacts business in New York, contracts to supply goods or services within New York, engages in a persistent course of conduct in New York, and expects, or should reasonably expect, its acts to have legal consequences in New York.

## FACTUAL BACKGROUND

### Valiant's History and Intellectual Property Rights

10.  In 1989, Jim Shooter, former Editor in Chief of Marvel Comics, and Steve Massarsky, former Allman Brothers Band manager, founded Voyager Communications, Inc. In or around 1990, renowned creator Bob Layton and celebrated artist Barry Windsor-Smith joined Voyager Communications, Inc. and helped launch the comic book imprint, Valiant Comics.

11.  Combining unique characters and high-quality writing, Valiant Comics rapidly

became a leader in the comic book industry and developed a huge and loyal fan base. During the 1990s, Valiant Comics would go on to sell more than 80 million comic books, while Valiant's characters would be featured in video games that sold 8 million copies. At one point in time, Valiant Comics was the third leading comic book publisher in the U.S., trailing only DC and Marvel.

12. In 1994, Acclaim Entertainment, Inc. acquired Voyager Communications, Inc. for $65 million and thereafter renamed the company "Acclaim Comics, Inc." Both the Valiant name and characters continued in use.

13. Since at least as early as 1991, and long prior to any date of use that VIP may claim, Acclaim Entertainment, Inc. and its predecessors have used some or all of the following marks in connection with the characters in their comic books and related goods and services: VALIANT, HARBINGER, NINJAK, X-O MANOWAR, QUANTUM & WOODY, ETERNAL WARRIOR, DOCTOR MIRAGE, DOCTOR TOMORROW, BLOODSHOT, ARCHER & ARMSTRONG, SHADOWMAN, THE GRACKLE, TIMEWALKER, TRINITY ANGELS, ARMORINES, RAI AND THE FUTURE FORCE, THE H.A.R.D. CORPS, and TROUBLEMAKERS (the "Valiant Marks").

14. Acclaim and its predecessors have expended a substantial amount of time, energy and resources promoting and marketing its goods and services under the Valiant Marks. As a result of the long-standing marketing, provision and sale of goods and services under the Valiant Marks, and the adherence to high standards of quality control, Acclaim and its predecessors have met with great public and trade acceptance.

15. As a result, the Valiant Marks became widely recognized and strongly associated with Acclaim in the minds of relevant consumers.

16. In September 2004, Acclaim Entertainment, Inc. filed for bankruptcy.

17. Even with this temporary cessation of publication associated with the economic down turn which culminated in bankruptcy, the sales of Valiant comics did not cease. As is common in the comic book industry, comic books, posters, trading cards, games and other merchandise bearing the Valiant Marks and depicting the Valiant characters continued to enjoy robust sales and popularity through comic book stores and the internet. Indeed, Valiant Comics and merchandise maintained its almost cult-like popularity among readers, with Valiant comics being frequently featured on internet fan websites.

18. In an asset auction held by the United States Bankruptcy Court in April 2005, Plaintiff Valiant Entertainment, Inc. purchased all rights, title and interest to the Valiant Marks, including all associated goodwill, from Acclaim Entertainment, Inc. In addition to acquiring all trademark rights, Valiant Entertainment, Inc. acquired the names of all comic book series, character likenesses, art, animation and related copyrighted materials.

19. Valiant Entertainment, Inc. thereafter provided Valiant Entertainment LLC with an exclusive license to all intellectual property associated with the assets purchased in bankruptcy, including all trademarks, names of the comic book series, art, animation, character likenesses, and related copyrighted materials

20. Valiant Entertainment LLC thereafter commenced efforts to restore the Valiant imprint to the prominence it had enjoyed in the mid-1990s.

21. As part of these efforts, Valiant Entertainment LLC marketed "Harbinger: The Beginning" in June 2007 and released it in August 2007. This hard cover book contains a reprint of an original Harbinger story digitally recolored by some of Valiant's original colorists and

remastered by the original author, Jim Shooter. Also included are full color coupons for "Story of Harada" and an all-new Jim Shooter story, "Origin of Harada."

22. In the coming months and years, Valiant Entertainment LLC plans to republish old Valiant comic books as well as to publish new comic books using the original Valiant characters and story lines.

23. Plaintiff Valiant Entertainment, Inc. maintains priority rights in the Valiant Marks and is the exclusive owner of all right, title and interest to several federal trademark registrations. These registrations are valid and subsisting, and in full force and effect.

24. Plaintiff Valiant Entertainment, Inc. is the owner of a United States trademark, Registration No. 1,786,756, registered on August 10, 1993, for ARCHER & ARMSTRONG. True and correct copies of trademark registration materials are attached hereto as Exhibit "A." This registration is incontestable.

25. Valiant Entertainment, Inc. is also the owner of a United States trademark, Registration No. 1,786,755, registered on August 10, 1993, for THE H.A.R.D. CORPS. True and correct copies of trademark registration materials are attached hereto as Exhibit "B." This registration is incontestable.

26. Valiant Entertainment, Inc. is also the owner of a United States trademark, Registration No. 1,793,650, registered on September 21, 1993, for BLOODSHOT. True and correct copies of trademark registration materials are attached hereto as Exhibit "C." This registration is incontestable.

27. Valiant Entertainment, Inc. is also the owner of a United States trademark, Registration No. 1,974,455, registered on May 21, 1996, for X-O MANOWAR. True and

123895.00101/11701213v.1

correct copies of trademark registration materials are attached hereto as Exhibit "D." This registration is incontestable.

28.     Valiant Entertainment, Inc. is also the owner of a United States trademark, Registration No. 2,121,580, registered on December 16, 1997, for THE GRACKLE. True and correct copies of trademark registration materials are attached hereto as Exhibit "E."

29.     Valiant Entertainment, Inc. is also the owner of a United States trademark, Registration No. 2,449,504, registered on May 8, 2001, for SHADOWMAN. True and correct copies of trademark registration materials are attached hereto as Exhibit "F."

30.     Valiant Entertainment, Inc. is also the owner of a United States trademark, Registration No. 3,254,218, registered on June 19, 2007, for TRINITY ANGELS. True and correct copies of trademark registration materials are attached hereto as Exhibit "G."

31.     Valiant Entertainment, Inc. is also the owner of a United States trademark, Registration No. 3,276,961, registered on August 7, 2007, for ARMORINES. True and correct copies of trademark registration materials are attached hereto as Exhibit "H."

32.     Valiant Entertainment, Inc. is also the exclusive owner of several United States trademark applications.

33.     Valiant Entertainment, Inc. owns United States trademark application, Ser. No.78/638,219, filed on May 26, 2005, for [star compass design]. True and correct copies of trademark application materials are attached hereto as Exhibit "I."

34.     Valiant Entertainment, Inc. also owns United States trademark application, Ser. No.78/887,147, filed on May 18, 2006, for X-O MANOWAR. True and correct copies of trademark application materials are attached hereto as Exhibit "J."

35. Valiant Entertainment, Inc. also owns United States trademark application, Ser. No. 78/638,132, filed on May 26, 2005, for SHADOWMAN. True and correct copies of trademark application materials are attached hereto as Exhibit "K."

36. Valiant Entertainment, Inc. also owns United States trademark application, Ser. No. 78/896,272, filed on May 30, 2006, for DOCTOR TOMORROW. True and correct copies of trademark application materials are attached hereto as Exhibit "L."

37. Valiant Entertainment, Inc. also owns United States trademark application, Ser. No. 78/896,259, filed on May 30, 2006, for TIMEWALKER. True and correct copies of trademark application materials are attached hereto as Exhibit "M."

38. Valiant Entertainment, Inc. also United States trademark application, Ser. No. 78/896,238, filed on May 30, 2006, for TROUBLEMAKERS. True and correct copies of trademark application materials are attached hereto as Exhibit "N."

39. Valiant Entertainment, Inc. also owns United States trademark application, Ser. No. 77/069,179, filed on December 21, 2006, for ETERNAL WARRIOR. True and correct copies of trademark application materials are attached hereto as Exhibit "O."

40. Valiant Entertainment, Inc. also owns United States trademark application, Ser. No. 77/069,210, filed on December 21, 2006, for HARBINGER. True and correct copies of trademark application materials are attached hereto as Exhibit "P."

41. Valiant Entertainment, Inc. also owns United States trademark application, Ser. No. 77/069,238, filed on December 21, 2006, for NINJAK. True and correct copies of trademark application materials are attached hereto as Exhibit "Q."

123895.00101/11701213v.1


42.    Valiant Entertainment, Inc. also owns United States trademark application, Ser. No. 77/252,347, filed on August 10, 2007, for  . True and correct copies of trademark application materials are attached hereto as Exhibit "R."

43.    The Valiant Marks have at all times continued to represent the excellence and style for which Plaintiffs and their predecessors have become so well known.

## Defendant's Unlawful Conduct

44.    In or about March 2005, VIP filed United States trademark applications for several of the trademarks that have long been associated with a Valiant comic book character, title or marks.

45.    Among others, VIP filed applications for: QUANTUM & WOODY (Serial No. 78598997); DR. MIRAGE (Serial No. 78598985); NINJAK (Serial No. 78598976); RAI AND THE FUTURE FORCE (Serial No. 78599008); HARBINGER (Serial No. 78598994); ETERNAL WARRIOR (Serial No. 78599008); VALIANT (Serial No. 78598994); and BLOODSHOT (Serial Number 78598971).

46.    According to VIP's federal applications, the applied-for marks are to be used in connection with comic books and related goods.

47.    It is notable that each of the applications was filed in late March 2005, during the pendency of the Acclaim bankruptcy proceeding, and a mere two weeks prior to the final disposition of assets by the United States Bankruptcy Court at auction. Upon information and belief, VIP paid a deposit to participate in the auction but ultimately decided not to attend.

48.    Each of these applications was filed in violation of Plaintiffs or their predecessor's intellectual property rights.

49. In further violation of those intellectual property rights, VIP published a limited edition comic book or "ashcan"[1] under the title, "Valiant Sneak Peak" [sic], in or about July 2007. Upon information and belief, VIP's ashcan, which retails for approximately $40.00, was first offered for sale at the San Diego, California Comic-Con 2007, a major convention sponsored by fans of comic books.

50. Upon information and belief, the first sale of the infringing ashcan was made to Mr. C's Comics, a comic book retailer, on or about July 3, 2007. Subsequent sales of the infringing ashcan work are believed to have followed.

51. The front cover of VIP's ashcan reads "Valiant Sneak Peak" and features a drawing of a woman, while the back cover reads "Valiant Intellectual Properties' Sneak Peak".

52. The contents of VIP's ashcan, which totals 12 pages, features a series of new characters bearing the names of well-known Valiant characters, including Harbinger, Bloodshot, Outcast, Punx, Rai and the Future Force, Ninjak, The Visitor, Dr. Mirage, Eternal Warrior and Secret Weapons. Without exception, the names of the characters depicted in VIP's ashcan correspond directly to the subject matter of the fraudulent trademark applications filed by VIP in March 2005.

53. In essence, VIP has sought to hijack the distinctive names and trademarks long-associated with Valiant's original characters and to apply them to new comic book characters concocted by VIP. To analogize, it would be as if a rival publisher were to issue a comic strip

---

[1] According to Wikipedia, the term "ashcan" or ashcan copy "originated in the Golden Age of comic book publishing, meant to describe a publication produced solely for legal purposes (such as copyright), which was not normally intended for distribution. . . . The implication is that the printed material will go straight from the printer to the trash, which was often the case. Ashcan editions frequently contained unlettered stories, unfinished art or even just whatever wastepaper had been conveniently available at the time. The goal in making them was to get something out with the wanted title slapped on as quickly as possible so that the publisher could make some claim to having been the first in print if a competitor tried to publish a similar title."

123895.00101/11701213v.1

called "Peanuts" in which Charles Schulz's lovable characters were replaced by wholly new characters all of which bore the name of an original Peanuts' character. Thus, Snoopy might be "reimagined" as a 30 year old plumber, Lucy as his adoring wife, Charlie Brown as the nosy neighbor, and Linus as the local playboy.

54. VIP's ashcan includes the following legal boiler plate:

> *"All characters featured in this book, the distinctive names, images, elements, logos, symbols, and likenesses contained therein and associated therewith that have been reproduced (collectively "intellectual property") are tm and (c) 2007 Valiant Intellectual Properties, LLC. unless otherwise noted."*

55. Upon learning of Defendant's unlawful activities, Plaintiffs' attorneys sent a letter to certain comic book retailers demanding, among other things, that they cease and desist immediately from any further sale of VIP materials which made use of marks that are confusingly similar to the Valiant Marks.

56. Upon information and belief, Defendant has taken no steps to cease or desist from its unlawful conduct.

57. Defendant's conduct is designed to trade upon the valuable goodwill and business reputation associated with Valiant's well known and highly distinctive marks and characters.

58. Defendant's use of the counterfeit marks in connection with comic books has caused and is likely to cause confusion, mistake or deception as to the source, association, affiliation or sponsorship of the goods or services offered at Defendants' web site. Specifically, ordinary consumers will mistakenly believe that the goods advertised or offered by Defendant are owned, operated, sponsored or approved by Plaintiffs.

59. All such conduct by Defendant was and continues to be in bad faith, willful, deliberate and in knowing violation of the law.

## COUNT I

**[Violation of Lanham Act, 15 U.S.C. § 1114;
Infringement of Federally Registered Marks]**

60. Plaintiffs incorporate the allegations of Paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61. Defendant, with knowledge of Plaintiffs' exclusive rights in and to the Valiant Marks, and intending to trade on the goodwill and reputation of Plaintiffs in the marketplace, has adopted and used identical marks with the intent of confusing the trade and public.

62. Defendant's unlawful activities are likely to and, upon information and belief, have already had the result of causing confusion, mistake and deception in the trade and with the purchasing public.

63. Defendant's unlawful conduct constitutes infringement of a federally registered trademark in violation of Section 35 of the Lanham Act, 15 U.S.C. §1114.

64. As a result of Defendant's conduct, Plaintiffs have suffered and continue to suffer irreparable damage.

65. Plaintiffs have no adequate remedy at law and, therefore, are entitled to preliminary and permanent injunctive relief.

66. Defendant's actions are unlawful and have damaged Plaintiffs in an amount not yet calculated.

## COUNT II

**[Violation of Lanham Act, 15 U.S.C. § 1125(a);
False Designation of Origin, False Description and False Representation]**

67. Plaintiffs incorporate the allegations of Paragraphs 1 through 66 of this Complaint as if fully set forth herein.

123895.00101/11701213v.1

68. Defendant, with knowledge of Plaintiffs' exclusive rights in and to the Valiant Marks, and intending to trade on the goodwill and reputation of Plaintiffs in the marketplace, has adopted and used identical marks with the intent of confusing the trade and public.

69. Defendant's use of the counterfeit marks constitutes a false designation of origin, a false or misleading description of fact, and a false or misleading representation of fact that Defendant's goods originate with, are sponsored by or approved by Plaintiffs, or that Defendant and its goods are affiliated with, connected to, or associated with Plaintiffs.

70. Defendant's unlawful conduct constitutes a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

71. As a result of Defendant's conduct, Plaintiffs have suffered and continue to suffer irreparable damage.

72. Plaintiffs have no adequate remedy at law and, therefore, are entitled to preliminary and permanent injunctive relief.

73. Defendant's actions are unlawful and have damaged Plaintiffs in an amount not yet calculated.

## COUNT III

### [Violation of Lanham Act, 15 U.S.C. § 1125(a); Infringement of a Common Law Mark]

74. Plaintiffs incorporate the allegations of Paragraphs 1 through 73 of this Complaint as if fully set forth herein.

75. Defendant, with knowledge of Plaintiffs' exclusive rights in and to the Valiant marks, and intending to trade on the goodwill and reputation of Plaintiffs in the marketplace, has adopted and used identical marks with the intent of confusing the trade and public.

123895.00101/11701213v.1

76. Defendant's use of identical marks is likely to cause consumer confusion to the detriment of Plaintiffs.

77. Defendant's unlawful conduct constitutes a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

78. As a result of Defendant's conduct, Plaintiffs have suffered and continue to suffer irreparable damage.

79. Plaintiffs have no adequate remedy at law and, therefore, are entitled to preliminary and permanent injunctive relief.

80. Defendant's actions are unlawful and have damaged Plaintiffs in an amount not yet calculated.

## COUNT IV

### [Common Law Unfair Competition]

81. Plaintiffs incorporate the allegations of Paragraphs 1 through 80 of this Complaint as if fully set forth herein.

82. Defendant has engaged in conduct which is contrary to honest, industrial and commercial practice. Defendant's acts are calculated to procure an unfair competitive advantage by misappropriating the valuable goodwill and intellectual property developed by Plaintiffs and its predecessors at substantial effort and expense.

83. Defendant's activities constitute unfair competition in violation of the common law of the state of New York.

84. As a result of Defendant's conduct, Plaintiffs have suffered and continue to suffer irreparable damage.

85. Plaintiffs have no adequate remedy at law and, therefore, are entitled to preliminary and permanent injunctive relief.

123895.00101/11701213v.1

86. Defendant's actions are unlawful and have damaged Plaintiffs in an amount not yet calculated.

**WHEREFORE**, Plaintiffs demand that:

a. Judgment be entered in favor of Plaintiffs and against Defendant as to each of the above claims;

b. Defendant be required to account to Plaintiffs for Defendant's profits, the actual damages suffered by Plaintiffs as a result of Defendant's acts, which shall be trebled as provided for under the Lanham Act, together with interest and costs;

c. Defendant, and any of its officers, directors, agents, servants, employees, representatives, successors, assigns, freelancers, attorneys, licensees, distributors and all persons in active concert or participation with Defendant be enjoined from directly or indirectly:

   i. using Plaintiffs marks, or any confusingly similar designation, alone or in combination with other words, as a trademark, service mark, domain name, URL, trade dress, or trade name to identify, market, distribute, advertise, promote, to offer for comic books, trading cards, apparel, movies, games or other related goods or services;

   ii. continuing acts of false designation of origin or unfair trade practices herein complained of, or doing any acts that may cause Defendant's goods or services to be mistaken for,

14

      confused with or passed off as Plaintiffs' goods and services; and

    iii.  otherwise infringing Plaintiffs' marks.

d.  Defendant be ordered to expressly abandon any and all trademark or service mark applications to register any marks, characters or intellectual property confusingly similar to any of the Valiant Marks and will be permanently enjoined from filing any other applications relating to the Valiant Marks;

e.  Defendant be ordered to pay the costs of this action, including attorney's fees incurred by Plaintiffs in connection with Defendant's willful infringement;

f.  Defendant be required to deliver up for destruction all goods, signs, packaging, literature, advertising and other materials bearing the infringing mark and any confusingly similar name or mark, or colorable imitation thereof, used in connection with the infringing mark;

g.  Defendant be required to remove the infringing mark and any confusingly similar name or mark from its website(s), HTML code, search engine query terms and any other electronic communications hosts, links and devices;

h.  Defendant be directed to file with this Court and to serve on Plaintiffs counsel within ten (10) days after issuance of an injunction, a report in

writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction; and

i.  Such other and further relief as this Court deems just and proper.

                              Respectfully submitted,

                              BLANK ROME LLP

                              Leonard D. Steinman
                              Jeremy Reiss
                              The Chrysler Building
                              405 Lexington Avenue
                              New York, NY 10174
                              Tel:   (212) 885-5000

                              Attorneys for Plaintiffs

Of Counsel:

Timothy D. Pecsenye
Dennis P. McCooe
Blank Rome LLP
One Logan Square
Philadelphia, PA 19103
Tel:   (215) 569-5619

Dated: August 31, 2007

123895.00101/11701213v.1